**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY and CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, )))) | |
| Plaintiffs, ) | Case no. _____ |
| v. ))) | |
| FRESH SOURCE INTERNATIONAL, INC., )) | |
| Defendant. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, CINCINNATI INSURANCE COMPANY and CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, bring this action for declaratory judgment against FRESH SOURCE INTERNATIONAL INC. In support thereof, Plaintiffs state as follows:

**PRELIMINARY STATEMENT**

1. This is a declaratory judgment action brought pursuant to 28 U.S.C § 2201 and 28 U.S.C. § 1332 to determine the rights and obligations of the parties under two commercial general liability ("CGL") insurance policies.

2. This action will resolve an insurance coverage dispute between Cincinnati Insurance Company ("CIC") and Cincinnati Specialty Underwriters Insurance Company ("CSU") (collectively, "Cincinnati") and Fresh Source International Inc. ("Fresh Source"). The issue is whether Cincinnati owes coverage to Fresh Source in relation to a lawsuit filed against it in the Southern District of California, titled *The Décor Corporation PTY*

1

*Ltd. v. Aldi Inc. and Fresh Source International Inc.*, case no. 3:18-cv-02196 H BGS (the "Underlying Suit").

## PARTIES, JURISDICTION AND VENUE

3. Cincinnati Insurance Company is a corporation organized under the laws of Ohio with its principal place of business in Ohio. For the purposes of 28 U.S.C. § 1332, Cincinnati is a citizen of Ohio.

4. Cincinnati Specialty Underwriters Insurance Company is a corporation organized under the laws of Delaware with its principal place of business in Ohio. For the purposes of 28 U.S.C. § 1332, Cincinnati is a citizen of Ohio and Delaware.

5. Fresh Source International, Inc. ("Fresh Source") is a corporation organized under the laws of Illinois with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Fresh Source is a citizen of Illinois.

6. The Underlying Suit seeks injunctive relief, compensatory damages, treble and punitive damages, and attorneys' fees. Fresh Source seeks from Cincinnati a defense for the Underlying Suit and indemnification of any damages that may be awarded against it in connection with that Lawsuit. The anticipated defense costs alone could easily exceed $75,000 and, in the event of a liability determination, the liability limits of each CGL policy is $1 million.

7. Jurisdiction is secure under 28 U.S.C. § 1332. The parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum.

8. Venue is appropriate under 28 U.S.C. § 1391(b)(2). The insurance policies at issue were both issued in this district, the named insured on the policy resides in this

district and the transactions related to the insurance policies at issue took place in this district.

## BACKGROUND TO COVERAGE DISPUTE

**A.     Underlying Suit**

9.     This insurance coverage dispute arises out of an underlying intellectual property lawsuit. Décor filed the Underlying Suit in the Southern District of California, seeking damages for alleged violations of its copyright, trademark and design patent rights. In particular, Décor claims that Aldi and Fresh Source violated Décor's intellectual property rights by manufacturing and selling a "knockoff" microwave popcorn maker. The Underlying Suit was filed on September 21, 2018. (A true and correct copy of the Complaint in the Underlying Suit is attached as **Exhibit A**.)

10.     The Complaint alleges that Décor sold a microwave popcorn maker product (the "Décor Product") to Aldi between 2014 and 2017. In 2016, Aldi asked Décor to "rebrand" the Décor Product with Aldi's private label name ("Crofton") and to reduce the price charged to Aldi. Décor agreed to these terms and continued to supply the Décor Product to Aldi for resale under Aldi's private label through 2016. (Exhibit A, ¶2-3, 7-18).

11.     The Underlying Lawsuit alleges that while Aldi was selling the rebranded Décor Product, it was negotiating with Fresh Source to make a "knockoff" version of Décor's Product. In early 2017, Aldi "unexpectedly" did not renew its supply contract with Décor. (Exhibit A, ¶ 3, 18).

12. Décor alleges that Aldi discontinued purchases of the Décor Product and replaced it with a popcorn maker sold to Aldi by Fresh Source (the "Fresh Source Product") which allegedly blatantly copied the Décor Product. (Exhibit A, ¶ 3).

13. Décor alleges that the overall appearance of the Fresh Source Product is virtually identical to the Décor Product and that the packaging, labeling, trade dress and configuration induces consumers to believe they are buying Décor popcorn makers. (Exhibit A, ¶ 20).

14. Décor alleges that Aldi gave Fresh Source either an exemplar or photos to enable Fresh Source to copy the design of the Décor Product for the Fresh Source Product. (Exhibit A, ¶ 21).

15. Décor alleges that the design of the Fresh Source Product infringes Décor's patents, trade dress and copyrights. Décor claims that Aldi and Fresh Source acted intentionally and willfully in violating Décor's rights. (Exhibit A, ¶ 23-25).

16. Counts I–III of the Complaint are asserted against Aldi, and allege infringement of three separate patents. In those Counts, Décor alleges that Aldi knew the Décor Product contained patented inventions, and knew that the Fresh Source Product incorporated those patented features. Décor alleges that it suffered from price erosion and has lost customers, market share, and customer goodwill due to Aldi's infringement. (Exhibit A, ¶ 26-55).

17. Count IV asserts Unfair Competition under the Lanham Act (15 U.S.C. §1125(a)) against both Aldi and Fresh Source. Décor alleges that it owns all rights in its marks and trade dress. By selling "cheaper, inferior products that suggest to the

consumers that they are substitutes for Décor's product," Aldi and Fresh Source have engaged in illegal unfair competition in violation of the Lanham Act. (Exhibit A, ¶ 56-63).

18.     Décor alleges that Defendants have acted deliberately and willfully with intent to reap the benefit of Décor's goodwill and reputation. (Exhibit A, ¶ 60).

19.     Count V alleges Copyright Infringement by Aldi and Fresh Source. In particular, Décor asserts that its copyrighted label ("3 Simple Steps to Make a Healthy Snack") was directly copied in the Fresh Source Product. (Exhibit A, ¶ 64-74).

20.     Count VI asserts Contributory Copyright Infringement by Aldi. This claim alleges that Fresh Source directly infringed Décor's copyrighted work by reproducing and distributing copies of Décor's work. Décor alleges that this conduct (by Fresh Source) was induced, caused, and materially contributed to by Aldi. Décor seeks damages and attorneys' fees against Aldi on this basis. (Exhibit A, ¶ 75-78).

21.     Count VII is the mirror image of Count VI. It alleges Contributory Copyright Infringement by Fresh Source. It alleges that Fresh Source induced, caused, and materially contributed to Aldi's infringing conduct. (Exhibit A, ¶ 79-82).

22.     Count VIII asserts Vicarious Copyright Infringement against Aldi, claiming that Fresh Source directly infringed Décor's copyrighted works. Aldi had the right and ability to control that infringing conduct by Fresh Source, and therefore is liable for vicarious copyright infringement. (Exhibit A, ¶ 83-86).

23.     Count IX asserts Unfair Competition against both Aldi and Fresh Source, based on violations of California Business & Professions Code §17200. This claim asserts that the public is likely to be damaged due to unlawful or fraudulent business practices and unfair, deceptive or misleading advertising. (Exhibit A, ¶ 87-89).

24. Based on these allegations, Décor seeks a variety of relief against Aldi and Fresh Source, including injunctive relief; monetary damages based on profit from sales of the infringing popcorn makers; trebled or enhanced statutory damages; and attorneys' fees and costs of suit. (Exhibit A, pp. 24-26).

**B.     Additional Facts Relevant to Coverage**

25. Fresh Source produces OEM ("original equipment manufactured") products for its customers, typically for the private label name of its customer, or under no label at all. The name "Fresh Source" does not appear on any of its products and it does not advertise any of the items that it produces.

26. Fresh Source explicitly told Cincinnati during Cincinnati's investigation of the claims against Fresh Source in the Underlying Suit that Fresh Source does not do any advertising. Fresh Source has not provided any different or corrected information to Cincinnati as to this fact.

27. In or about December 2016, Aldi invited Fresh Source to bid on the opportunity to manufacture and sell a microwave popcorn maker to Aldi. The Invitation contained a description of the product sought by Aldi.

28. After Fresh Source sent a bid to Aldi with the cost data for the popcorn maker sought by Aldi, Aldi informed Fresh Source that it had submitted the successful bid to produce the popcorn makers.

29. On May 18, 2017, Aldi sent a purchasing contract to Fresh Source, reflecting agreement by Fresh Source to produce 41,400 popcorn makers for sale by Aldi under Aldi's "Crofton" label.

30. Fresh Source arranged for manufacture of the Crofton microwave popcorn makers. The Fresh Source Product was shipped from China in August 2017 and arrived in Los Angeles on September 11, 2017.

31. Once the Fresh Source Product was delivered to the port in Los Angeles, the work of Fresh Source was done. Fresh Source had no further obligations to Aldi with respect to the popcorn makers, Fresh Source did not receive updates or other information from Aldi about the number of units sold or at what retail price, nor did it expect to receive such information.

32. Fresh Source itself did no advertising of the Fresh Source Product. Aldi did not involve Fresh Source in any decisions regarding Aldi's advertising or display of this product. Fresh Source's name does not appear on the popcorn maker sold to Aldi, or on any of the labels provided to Aldi for that product.

**C.  Decor's Cease and Desist Letter**

33. By letter dated March 5, 2018, Décor notified Aldi that its sale and distribution of the new "Crofton Microwave Popcorn Maker" infringed Décor's patent, copyright and trade dress rights. Décor asked Aldi to stop all manufacturing, marketing, sale and distribution of the new product; provide information about the extent of sales of the new product and other information; and agree to purchase any future microwave popcorn makers from Décor. (A copy of the March 5, 2018 letter is attached as **Exhibit B).**

34. Aldi sent a copy of Décor's March 5, 2018 letter to Fresh Source on or about March 14, 2018.

7

**D.   Cincinnati's Attempts to Evaluate Coverage, and
       Communications with Fresh Source**

35.   On or about September 28, 2018, Fresh Source notified Cincinnati of the Décor Lawsuit. Prior to that date, Cincinnati did not know from any source about the issues raised by Décor, including the March 5, 2018 cease and desist letter from Décor.

36.   In October 2018, Cincinnati asked Fresh Source to provide information in connection with Cincinnati's investigation of the claim against Fresh Source. On October 8, 2018, a Cincinnati representative spoke with principals of Fresh Source. At that time, principals of Fresh Source told Cincinnati (among other things):

- Fresh Source does no advertising of any of its products;
- Fresh Source did not advertise the popcorn makers that it sold to Aldi;
- Fresh Source had no role in any advertising that Aldi may have done with respect to the popcorn makers;
- Once the Fresh Source Product arrived in the United States from the manufacturer, Fresh Source had no further involvement of any kind with respect to the popcorn makers and Fresh Source was not given information about sales of those products;
- The price paid by Aldi to Fresh Source for the Fresh Source Product was not dependent in any way on the sale or success of those products.

37.   On October 30, 2018, CIC sent a letter to Fresh Source explaining why the CIC Policy provided no coverage for the Underlying Suit. CIC asked Fresh Source to either withdraw its tender to CIC or to explain why Fresh Source believed coverage was available under the CIC Policy for the Underlying Suit. CIC told Fresh Source that it would consider any additional information or materials that Fresh Source provided. CIC asked Fresh Source to respond within 30 days (i.e., around November 29, 2018). (A copy of CIC's October 30, 2018 letter is attached as **Exhibit C.)**

38.   On November 16, 2018, CSU sent a separate letter to Fresh Source explaining why the CSU Policy provided no coverage for the Underlying Suit. Like the

CIC letter, CSU asked Fresh Source to withdraw its tender to CSU or to explain why Fresh Source believed coverage was available under the CSU Policy. CSU stated that it would consider any additional information or materials that Fresh Source provided. CSU asked Fresh Source to respond within 30 days (i.e., around December 15, 2018). (A copy of CSU's November 16, 2018 letter is attached as **Exhibit D).**

39. Fresh Source did not respond or otherwise communicate with Cincinnati until January 14, 2019, when its coverage counsel sent a letter to Cincinnati stating that Fresh Source "disagrees" with Cincinnati's interpretation of the policy language. The January 14, 2019 letter from Fresh Source did not explain why it "disagreed", did not explain or contradict the facts on which the Cincinnati's letters relied, and did not provide any additional information to assist Cincinnati to reach a different coverage conclusion. (A copy of the January 14, 2019 letter is attached as **Exhibit E).**

40. On January 15, 2019, counsel for Cincinnati called coverage counsel for Fresh Source to learn the basis for Fresh Source's "disagreement" with Cincinnati's coverage position. Coverage counsel for Fresh Source declined to explain, saying that she needed permission from Fresh Source to provide any explanation.

41. On January 18, 2019, coverage counsel for Cincinnati wrote to coverage counsel for Fresh Source, again seeking an explanation so that Cincinnati could consider any possible resolution of the outstanding coverage issue. (A copy of the January 18, 2019 email letter is attached as **Exhibit F).**

42. On February 1, 2019, Fresh Source sent a letter to Cincinnati. Fresh Source asserted that "by allegedly causing the infringing product to be placed on Aldi's shelves, Fresh Source advertised the popcorn makers" and that "Fresh Source

9

allegedly infringed on the copyright or trademark of Décor by 'advertising' the popcorn maker in Aldi's stores." (A copy of the February 1, 2019 letter is attached as **Exhibit G**).

43. Cincinnati has received no further information or communications from Fresh Source regarding this matter since the February 1, 2019 letter.

**E.** <u>**The Cincinnati Policies issued to Fresh Source**</u>

44. CSU issued a general liability insurance policy to Fresh Source under policy number CSU0065557, with effective dates of December 17, 2016 to December 17, 2017 (the "CSU Policy"). The CSU Policy has liability limits of $1 million for Personal and Advertising Injury to any organization. (A true and correct copy of the CSU Policy is attached as **Exhibit H)**.

45. CIC issued a general liability insurance policy to Fresh Source under policy number ENP 046 84 10, with effective dates of December 17, 2017 to December 17, 2018 (the "CIC Policy"). The CIC Policy has liability limits of $1 million for Personal and Advertising Injury to any organization. The CIC Policy also supplies umbrella liability coverage ("Umbrella Coverage"). (A true and correct copy of the CIC Policy is attached as **Exhibit I)**.

**COUNT I**
**NO COVERAGE FOR THE DÉCOR LAWSUIT UNDER THE**
**BODILY INJURY OR PROPERTY DAMAGE COVERAGES**

46. Cincinnati incorporates and re-alleges paragraphs 1-45 as if fully set forth herein.

47. The Policies define "Bodily injury" to mean "bodily injury, sickness or disease sustained by a person." (Exhibit H at CSU 0030; Exhibit I at CIC 0022). The

CIC Umbrella contains a broader definition, including humiliation and mental anguish. (Exhibit I at CIC 0065).

48. The Policies define "Property damage" to mean "physical injury to tangible property" or "loss of use of tangible property that has not been physical injured." (Exhibit H at CSU 0033; Exhibit I at CIC 0026 and CIC 0068).

49. The Décor Complaint does not allege or seek damages for any Property Damage or Bodily Injury suffered by Décor.

50. As a result, the portions of the Cincinnati Policies providing coverage for Bodily Injury and Property Damage are not triggered by the Underlying Suit and there is no coverage for that Lawsuit under these portions of the Policies.

**COUNT II**
**FRESH SOURCE IS NOT ENTITLED TO COVERAGE FOR THE DÉCOR LAWSUIT UNDER THE PERSONAL AND ADVERTISING INJURY COVERAGES**

51. Cincinnati incorporates and re-alleges paragraphs 1-50 as if fully set forth herein.

52. Coverage B of the Cincinnati Policies supplies coverage for Personal and Advertising Injury. (Exhibit H at CSU 0023-25; Exhibit I at CIC 0013-16 and CIC 0052). The Cincinnati Policies define Personal and Advertising Injury to mean injury arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;
      f.      The use of another's advertising idea in your "advertisement"; or
      g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Exhibit H at CSU 0032; Exhibit I at CIC 0025). The CIC Umbrella contains a broader list of "offenses," including abuse of process and discrimination. (Exhibit I at CIC 0067-68).

    53.    The only Personal and Advertising Injury "offense" potentially relevant to the Décor Lawsuit is "*Infringing upon another's copyright, trade dress or slogan in your 'advertisement.*'" The Décor Complaint does not assert any claims against Fresh Source that would fall within any of the other Personal and Advertising Injury "offenses."

    54.    The Cincinnati Policies provide that the words "you" and "your" in the Policy refer to the Named Insured shown in the Declarations of the Policy, i.e., Fresh Source. (Exhibit H at CSU 0018 and 0003; Exhibit I at CIC 0007, CIC 0001 and CIC 0052).

    55.    To fall within Personal and Advertising Injury coverage of the Cincinnati Policies, Décor's alleged injury must have been caused by infringement upon Décor's copyright, trade dress or slogan **in an "advertisement" by Fresh Source**.

    56.    The CIC Policy defines "Advertisement" to mean 'a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Exhibit I at CIC 0022). The CSU Policy and the Umbrella contain a nearly identical definition of "Advertisement." (Exhibit H at CSU 0030; Exhibit I at CIC --64).

57. The Underlying Complaint does not allege that Fresh Source infringed Décor's rights in any "advertisement" by Fresh Source, within the meaning of the Policies.

58. Fresh Source made no attempt to attract customers for the Fresh Source Product or to sell the Fresh Source Product to the general public. Its sole "customer" for the popcorn makers was Aldi, which had solicited a bid from Fresh Source. The sale of Fresh Source Product to Aldi did not involve any "advertisement" by Fresh Source as defined by the Cincinnati Policies.

59. Fresh Source did not advertise the allegedly infringing popcorn maker at any time and in fact does no advertising at all.

60. Décor's Complaint does not allege that its copyright, trade dress or slogan were infringed *in* any *advertisement* by Fresh Source, within the meaning of the Cincinnati Policies.

61. As the Underlying Suit does not allege any infringement of Décor's rights *"in an advertisement" by Fresh Source*, the Underlying Suit does not trigger Personal and Advertising Injury coverage for Fresh Source under the Cincinnati Policies.

62. Cincinnati has no duty to provide defense or indemnity to Fresh Source in relation to the Underlying Suit because the Décor Complaint does not allege any Personal and Advertising Injury within the meaning of the Cincinnati Policies.

### COUNT III
### FRESH SOURCE IS NOT ENTITLED TO COVERAGE FOR THE DÉCOR LAWSUIT DUE TO THE KNOWING VIOLATION EXCLUSION

63. Cincinnati incorporates and re-alleges paragraphs 1-62 as if fully set forth herein.

64. The Cincinnati Policies do not provide coverage for:

a.  *Knowing Violation of Rights of Another*

    *"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".*

(Exhibit H at CSU 0023; Exhibit I at CIC 0014 and CIC 0053) (the "Knowing Violation Exclusion").

65. As the Décor Lawsuit alleges that Fresh Source acted knowingly and intentionally in violation of Décor's exclusive rights, and intended to profit from Décor's design by causing confusion among consumers, coverage for Fresh Source is excluded by the Knowing Violation of Rights of Another exclusion in the Policies.

## COUNT IV
## FRESH SOURCE IS NOT ENTITLED TO COVERAGE FOR THE DÉCOR LAWSUIT DUE TO THE INFRINGEMENT EXCLUSION

66. Cincinnati incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

67. The Cincinnati Policies do not provide coverage for:

i.  *Infringement of Copyright, Patent, Trademark or Trade Secret*

    *"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights ...*

    *However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.*

(Exhibit H at CSU 0024; Exhibit I at CIC 0014-15 and CIC 0055) (the "Infringement Exclusion").

68. Décor claims that the popcorn maker produced by Fresh Source infringed its patents. Claims for patent infringement do not trigger coverage under the Policies,

14

and are expressly excluded by the Infringement Exclusion (no coverage for Personal and Advertising Injury "arising out of the infringement of … patent, trademark, trade secret or other intellectual property rights").

69. There is no coverage for any of the claims in the Underlying Complaint unless Décor asserts that infringement of copyright, trade dress or slogan occurred in an "advertisement" by Fresh Source.

70. As the Décor Lawsuit does not allege that Fresh Source infringed on Décor's rights in any "advertisement" by Fresh Source, coverage for Fresh Source is excluded by the Infringement exclusion in the Policies.

## COUNT V
## FRESH SOURCE IS NOT ENTITLED TO COVERAGE FOR THE DÉCOR LAWSUIT DUE TO FAILURE TO PROVIDE TIMELY NOTICE OF THE DÉCOR CLAIM

71. Cincinnati incorporates and re-alleges paragraphs 1-70 as if fully set forth herein.

72. The Cincinnati Policies contain certain conditions to coverage, including the requirement that the insured provide prompt notice of any Personal and Advertising Injury offense which might result in a claim. The Policies state, in relevant part:

> *2.  Duties in the Event of Occurrence, Offense, Claim or Suit*
>
> > *a.  You must see to it that we are notified as soon as practicable of an "occurrence" or a "personal and advertising injury" offense which may result in a claim.*
> > \*   \*   \*
> > *b.  If a claim is made or "suit" is brought against any insured, you must:*
> > *(1)  Immediately record the specifics of the claim or "suit" and the date received; and*
> > *(2)  Notify us as soon as practicable.*
> >
> > *You must see to it that we receive written notice of the claim or "suit" as soon as practicable.*

15

(Exhibit H at CSU 0029; Exhibit I at CIC 0019-20 and CIC 0062).

73. Fresh Source was required to comply with the Conditions of coverage under the Policies, if it intended to seek any coverage from Cincinnati for a claim.

74. Fresh Source has known about Décor's claim that the popcorn maker infringed on Décor's patent, copyright and trade dress since it received the cease-and-desist letter in March 2018. However, the first notice to Cincinnati of any dispute with Décor was on or about September 28, 2018.

75. This delay failed to comply with the notice conditions in the Policies regarding the underlying dispute.

76. The failure of Fresh Source to timely notify Cincinnati of the issues with Décor breached the notice condition in the Policies, and excuses Cincinnati from any obligation to Fresh Source in relation to that dispute.

**COUNT VI
FRESH SOURCE IS NOT ENTITLED TO COVERAGE FROM CIC
FOR THE DÉCOR LAWSUIT BECAUSE NO "OFFENSE" TOOK PLACE
DURING THE CIC POLICY PERIOD AND DUE TO THE
PRIOR PUBLICATION EXCLUSION**

77. Cincinnati incorporates and re-alleges paragraphs 1-76 as if fully set forth herein.

78. Coverage is provided for Personal and Advertising Injury only if the injury-causing "offense" was committed during the policy period. (Exhibit I at CIC 0013, CIC 0045 and CIC 0052).

79. The CIC Policy was in effect from December 27, 2017 to December 27, 2018.

80. The Underlying Suit does not allege that Fresh Source infringed on any of Décor's intellectual property rights during the Cincinnati policy period. The work of Fresh Source for Aldi in connection with the popcorn makers was completely finished in September 2017, when the Fresh Source Product arrived from China to the port in Los Angeles. This was three months before the CIC Policy became effective on December 27, 2017.

81. The CIC Policy does not provide coverage for:

c. *Material Published Prior to Coverage Term*

> *"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:*
> *(1) The inception of this Coverage Part; or*
> *(2) The "coverage term" in which insurance coverage is sought.*

(Exhibit I at CIC 0014 and CIC 0055) (the "Prior Publication Exclusion").

82. The Prior Publication Exclusion bars coverage for injury arising out of publication of material that happened prior to the CIC Policy period, i.e., before December 27, 2017. The CIC Policy provides no coverage for Personal and Advertising Injury that arose from any Fresh Source "advertisement" that took place prior to December 27, 2017.

83. As the Underlying Complaint does not allege that Fresh Source "advertised" the Fresh Source Product or created any promotional materials at all during the December 27, 2017 to December 27, 2018 time period, and because Fresh Source specifically told Cincinnati that it did not advertise during that time, coverage is not triggered under the CIC Policy.

17

## COUNT VII
## FRESH SOURCE IS NOT ENTITLED TO COVERAGE TO THE EXTENT THE DÉCOR LAWSUIT SEEKS INJUNCTIVE RELIEF RATHER THAN MONETARY DAMAGES

84. Cincinnati incorporates and re-alleges paragraphs 1-83 as if fully set forth herein.

85. The Policies supplies coverage for sums that Fresh Source is "legally obligated to pay as damages because of Personal and Advertising Injury to which this insurance applies." (Exhibit H at CSU 0023; Exhibit I at CIC 0013 and CIC 0052).

86. To the extent the Underlying Lawsuit seeks injunctive relief, such relief does not qualify as sums that Fresh Source might legally be obligated to pay "as damages" due to Personal and Advertising Injury.

87. Cincinnati has no duty to provide coverage, including any duty to defend or indemnify, for the costs of complying with injunctive relief, an attorneys' fees award, or any other relief that does not constitute "damages" under the Policies.

WHEREFORE, for the foregoing reasons, Cincinnati moves this Honorable Court for an order declaring that:

   a. Fresh Source is not entitled to coverage from Cincinnati Insurance Company under policy no. ENP 046 84 10 for the Underlying Lawsuit.

   b. Fresh Source is not entitled to coverage from Cincinnati Specialty Underwriters Insurance Company under policy no. CSU0065557 for the Underlying Lawsuit.

   c. Cincinnati Insurance Company has and had no obligation to defend or indemnify Fresh Source in relation to the Underlying Lawsuit.

   d. Cincinnati Specialty Underwriters Insurance Company has and had no obligation to defend or indemnify Fresh Source in relation to the Underlying Lawsuit.

    d.      Granting Cincinnati such other and further relief that the Court deems just under the circumstances.

Respectfully submitted,

/s/Hope G. Nightingale_____

Hope G. Nightingale (#06184864)
Michael P. Baniak (#6299036)
LITCHFIELD CAVO LLP
303 W. Madison, Suite 300
Chicago, IL 60606
312-781-6614 (Nightingale)
312-781-6596
Email: nightingale@litchfieldcavo.com
Email: Baniak@litchfieldcavo.com